# THE UNITED STATES, EX REL. THE BRIGHTWOOD RAILWAY CO.

*v.*

## O'NEAL.

## HOF *v.* THE CAPITAL TRACTION CO.

JUSTICES OF THE PEACE, JURISDICTION OF; CONSTITUTIONAL LAW; TRIAL BY JURY; APPEAL, RIGHT OF.

1. It was the legislative intention of Congress in the act of March 1, 1823 (3 Stat. 743), extending the jurisdiction of justices of the peace in this District, to provide for a common law jury in such courts; and the jury provided by that act is such a common law jury.

2. Under the act of Congress of March 1, 1823, and subsequent acts relating to the jurisdiction of justices of the peace in this District, such a justice of the peace has the power to instruct the jury upon questions of law arising in a case before him, may rule upon the admissibility of evidence, and may set aside the verdict and grant a new trial; but no appeal will lie from his judgment in any case tried before him by a jury, inasmuch as there is no provision of law in such a case for its removal to an appellate court upon bills of exception or otherwise. The right of appeal provided for by Sec. 1029, R. S. D. C., from judgments of justices of the peace to the Supreme Court of the District of Columbia applies only to such cases as are tried by a justice without a jury.

3. To overthrow a practice relating to appeals from justices of the peace which has obtained for seventy years, and the construction of the statute upon which such practice is based, the error of that construction must be made very plainly to appear.

4. The right of appeal is not a right of common law origin, but is of statutory creation; and it may be given, regulated or taken away by legislative enactment without violation of any inherent right.

5. A writ of error to the Supreme Court of the United States in a suit in which an order of the Supreme Court of this District refusing a writ of *mandamus* to compel a justice of the peace

to pass upon an appeal bond on an appeal from a judgment rendered by him, was affirmed by this court, *refused* on the ground of the case not being within any principle upon which a writ of error could be allowed.

The Chief Justice dissenting.

Nos. 601 and 632.    Submitted November 6, 1896.    Decided February 17, 1897.

HEARING on an appeal by the petitioner from an order refusing a writ of *mandamus* to compel a justice of the peace to pass upon an appeal bond on an appeal from his judgment in a case tried by a jury before him.    *Affirmed.* And,

HEARING on an appeal by the plaintiff from an order overruling a motion to quash a writ of *certiorari* issued to remove a cause instituted before a justice of the peace, in which a trial by jury had been demanded, and directing that certain proceedings before the justice be vacated.    *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Henry P. Blair* and *Mr. Corcoran Thom* for the appellant, the Brightwood Railway Company:

1. *Mandamus* or *certiorari* is the proper remedy to compel the approval of an appeal bond.    *State* v. *Clark,* 24 Neb. 318 ; *Cox* v. *Rich,* 24 Kans. 15 ; *Town of Orange* v. *Bill,* 29 Vt. 442 ; *Ex parte Morris,* 11 Grattan, 292.

2. In the District of Columbia, an appeal is allowed by statute from all judgments of a justice of the peace where the debt or demand exceeds the sum of five dollars.    Section 1027, R. S. D. C.

The decisions in *Davidson* v. *Burr,* 2 Cr. C. C. 515 ; *Maddox* v. *Stewart,* Id. 523 ; *Denny* v. *Queen,* 3 Cr. C. C. 217 ; *Smith* v. *Chase,* Id. 348 ; and *Fitzgerald* v. *Leisman,* 3 MacA. 6, are founded upon a misinterpretation and misapplication of the Seventh Amendment to the Constitution of the United States. The latter provision of this amendment applies only to facts found by a jury in a common law trial by jury.    *The Justices* v. *Murray,* 9 Wall. 274.

The object of the second clause of the Seventh Amendment was to preserve inviolate the effect of a common law trial by jury when once had, and it cannot therefore be argued that this clause of the Seventh Amendment could operate to deprive a suitor of the constitutional right of trial by a jury, which would be the effect if there was no appeal from the judgment of a justice of the peace in the District given upon the verdict of a jury. *East Kingston* v. *Towle,* 48 N. H. 57 (64); *Copp* v. *Henniker,* 55 N. H. 179; 3 Am. & Eng. Encyc. L. 723; *Work* v. *The State,* 2 Ohio St. 299; Miller on the Constitution, p. 511; *Vaughn* v. *Scade,* 30 Mo. 600; *People* v. *Fisher,* 20 Barb. (N. Y.) 652. As to what constituted a trial by jury at common law, see Blackstone's Commentaries, Vol. 3, Chap. 23. Also for an historical treatise on the meaning of the term "trial by jury" as used in the Federal Constitution and in the constitutions of the several States, see *Copp* v. *Henniker,* 55 N. H. 179.

3. The so-called jury trial before a justice of the peace in the District of Columbia is not a constitutional common law jury trial. The sections of the Revised Statutes of this District relating to jury trials before justices of the peace are Sections 1009 to 1017.

From an examination of these sections it will be seen that the twelve persons summoned are the ones who shall try the cause, each of whom shall be sworn by the justice well and truly to try the matter in difference between the parties, and a true verdict to give according to the evidence, and that the justice must give judgment thereon forthwith and issue execution accordingly. Therefore, the case must be tried by these twelve persons who are not, by oath, required to give their verdict according to law, and the justice has no power to rule upon the admissibility or competency of the evidence, or to instruct the jury, or to grant a new trial. In the case of *Sparf and Hansen* v. *The United States,* 156 U. S. 51, it was decided that the judge of the district court had properly charged the jury that they were only judges of

fact, and that they must take the law from the court. See also, *United States* v. *Morris*, 1 Curtis, 23; Miller on the Constitution, 511.

4. Congress has the power to establish inferior tribunals, and may prescribe any course of procedure in those inferior tribunals. They may enact that they shall consist either of one or six or twelve or fifteen judges, and no one can take exception thereto on the ground that he is deprived of his constitutional right of trial by jury, provided an appeal lies from such tribunals to a court where he can obtain his constitutional jury trial. *Steuart* v. *Mayor*, 7 Md. 500. See also *Morford* v. *Barnes*, 8 Yerger, Rep. 444; *Beers* v. *Beers*, 4 Conn. Rep. 535; *McDonald* v. *Schell*, 6 Sargt. & Rawle, 240; *Emerick* v. *Harris*, 1 Binn. (Pa.) 416; *Work* v. *State*, 2 Ohio St. 296; *Knight* v. *Campbell*, 62 Barb. (N. Y.) 16; Thompson & Merriam on Juries, Sec. 10, and cases there cited.

*Mr. Raymond A. Heiskell* and *Mr. M. J. Colbert* for the appellee O'Neal:

The sole question arising upon this record is whether in the District of Columbia an appeal will lie from the judgment of a justice of the peace based upon the verdict of a jury, whereby the whole case, both fact and law, may be tried *de novo*.

1. The second section of the Seventh Amendment to the Constitution provides that no fact tried by a jury shall be otherwise re-examined in any court of the United States, except according to the rules of the common law, and that this prohibition is an inhibition upon the right of appeal from a judgment of a justice of the peace founded upon the verdict of a jury, is the rule which has been in force in this District for more than seventy years. This clause of the amendment must be read as a distinct and separate provision of the Constitution. *Parson* v. *Bedford*, 3 Peters, 433; *Justices* v. *Murray*, 9 Wall. 274; 2 Story on Constitu-

tion, Sec. 1770. And that it is controlling upon this question has been decided in *Davidson* v. *Burr*, 2 Cr. C. C. 515, where it was held that the circuit court could not review the finding of a magistrate's jury because of the constitutional prohibition, and in the same case Chief Justice Cranch expressed the opinion that the proceedings of the magistrate could be reviewed only by *certiorari*. See, also, *Denny* v. *Queen*, 3 Cr. C. C. 217; *Smith* v. *Chase*, 3 Cr. C. C. 348.

The Supreme Court of the District of Columbia sitting in general term has twice decided adversely to the right of appeal in a case like the present. *Coleman* v. *Friedman*, 1 MacA. 160; *Fitzgerald* v. *Leisman*, 3 MacA. 6.

2. It is argued that the provisions of the act of 1823 require the magistrate's jury to pass upon both questions of law and fact, and that the justice of the peace has no power or authority to control or instruct the jury upon questions of law arising during the trial, and that, therefore, this act does not afford such a trial by jury as is guaranteed by the first section of the Seventh Amendment. It is argued that the constitutional jury trial is that method of the trial of causes where a jury disposes of the fact under the guidance and control of a judge who passes upon all questions of law arising under the progress of the trial. We submit that this view of the extent of the power and authority of the justice of the peace is a pure assumption, and that no case has been cited by the appellant to sustain it.

The only provision in the act of 1823 which countenances the doctrine contended for by the appellant is that part of the act which declares that when the verdict of the jury has been announced, the justice of the peace must forthwith give judgment thereon. The most that this language can be construed to mean is that the justice of the peace cannot exercise the power usually inherent in courts of common law jurisdiction, to set aside a verdict if it is against the evidence, or if it was otherwise erroneous or unjust. This

view of the law does not justify the inference that the magistrate could not direct the jury in advance how their verdict should be rendered, and it certainly does not justify the inference that the justice has no right or authority to pass upon questions of law arising during the trial.

That Congress in passing the act of 1823 intended to make the trial by jury before a justice of the peace a constitutional trial by jury not only appears from the provisions of the act itself, but from the debates in the Senate preceding the passage of the act the same inference is to be drawn.    40 Congressional Record, p. 270.    And the act itself provides that the jurors shall possess the qualifications and be subject to the exceptions provided for jurors by law. Sec. 1011, R. S. D. C.    The justice of the peace necessarily is the only person who can pass upon and determine those qualifications and those exceptions.    If the magistrate can exercise judicial functions in disposing of questions of law touching the capacity of the jury, why can he not exercise judicial functions in passing upon questions of law arising during the trial, when the act itself contains no restriction upon the exercise of such functions?

3.  That Congress has not provided some appropriate and satisfactory method by which questions of law passed upon in the trial before the magistrate, either by allowing a bill of exceptions or otherwise, is no argument against the jurisdiction of the inferior tribunal.    This is a defect which the legislature, and not the courts, must remedy.    But we contend that errors of law committed during the progress of a trial by jury may be reviewed and corrected.    It was distinctly held that the proceedings might be reviewed by writ of *certiorari*.    *Davidson* v. *Burr*, 3 Cranch, 515.

Ordinarily *certiorari* will only lie where the inferior tribunal is proceeding without jurisdiction.    This is undoubtedly the rule where the inferior tribunal possesses common law jurisdiction, but where the inferior tribunal is proceeding not according to the course of the common law but in

a summary manner, the writ of *certiorari* may be availed of not only to try the question of jurisdiction but to correct irregularities and errors in the trial.    *Groenveldt* v. *Burwell*, 1 Salk. 200 and 263 ; 3 Am. & Eng. Ency. L. 61, and cases cited in note.    This was the opinion of Mr. Justice Cox   · in the case of *Adriaans* v. *Johnson*, 24 Wash. Law Rep. 583, and he cites a number of authorities in support of that position.    See also *Sayres* v. *Commonwealth*, 88 Pa. 291 ; *Ex parte Tarlton*, 2 Ala. 35.

But whether this be so or not, and whether or not a right of appeal exists in cases like the present, is a matter entirely for the legislature.    All that either party in the justice's court has the right to ask for and receive is " a trial by jury" within the meaning of the Constitution.    *Rhines* v. *Clark*, 51 Pa. St. 96.    A writ of error is a legal remedy, nothing more.    It cannot be doubted that it is as much the right of the legislature to restrict and limit legal remedies as it is their duty to furnish them.    *Sayres* v. *Commonwealth*, 88 Pa. 291.

4. If. it be true that no constitutional trial by jury can be had in a magistrate's court, then it must follow that justices of the peace in this jurisdiction have no right or power to try any case where the amount in dispute exceeds $20, and it further follows that where a citizen of this District has a demand against his neighbor that exceeds $20 and is less than $100, there is no forum open to him where he can have redress, a condition of the law which we think this court will not establish or sanction.

By the act of Congress approved February 19, 1895, exclusive jurisdiction in demands not exceeding $100 is given to justices of the peace, hence resort cannot be had to the court of general jurisdiction in the first instance; and if it be true that any party is entitled to trial by jury where the amount in dispute exceeds $20, he is entitled to trial by jury in the first instance, and he cannot secure such a trial, according to the contention of the appellant, in the magis-

trate's court. It is not enough to say that it is sufficient that the right to trial by jury is preserved to him on appeal. The Supreme Court of the United States in the case of *Callan* v. *Wilson*, 127 U. S. 540, decided that the Police Court of the District of Columbia had no jurisdiction to try without a jury an offence triable at common law by a jury, merely because on appeal the right might be preserved.

It would seem to follow, therefore, that if no constitutional trial by jury can be had before a justice of the peace, then the whole system of trials by justices of the peace, and all the acts of Congress conferring jurisdiction upon them to the extent of more than $20, are inoperative and void. As before stated, this is a conclusion which we do not think this court can reach.

5. As to the essentials necessary to a trial by jury as guaranteed by the Constitution, see 2 Story, Sec. 1779, and note; *Work* v. *State*, 2 Ohio St. 297; *State* v. *Cox*, 3 English (Ark.), 436; *Koppicus* v. *State*, 16 Cal. 249.

*Mr. D. W. Baker, Mr. Alexander Wolf* and *Mr. Edwin Forrest* for the appellant Hof:

1. The justice of the peace has full power to try a case with the jury. The sections relating to the jury trials before justices of the peace in the District of Columbia are Secs. 1009–1017. Abert's Compilation, Ch. 37, pp. 311–12.

This act has been in effect in the District of Columbia since 1823 and has been construed by the court a number of times, particularly by the old circuit court, which, in all the cases decided therein, has never questioned the constitutionality of the act, and it was not until the recent enlargement of the jurisdiction of the justice of the peace that the constitutionality of the act has been questioned. That the act itself gives the justice a right to try a case with a jury, no one can doubt. The sections above cited require that the jury be of twelve men and possess the qualifications and be subject to the exceptions provided for jurors by law.

That as far as the construction of the jury itself goes it is a constitutional jury there can be no doubt. The act requiring jury trials in the court of the justice of the peace is very nearly in the same words as the Seventh Amendment to the Constitution of the United States. But it is the office of the justice that has been called in question, and it is alleged and authorities are cited to show that a justice of the peace has no authority to instruct a jury or to decide upon questions of evidence or to act in such a manner as a common law judge should, and it is said that in order to constitute a trial at common law by a common law jury it included not only the jury properly drawn, but also a common law judge with common law powers to regulate the conduct and the verdict of the jury.

There is high authority that holds that the jury in a justice of the peace court is not required to be a common law jury, and that the mere fact that the legislature has increased the jurisdiction of the justice of the peace court is not unconstitutional because it does not give the justice of the peace court all the powers of a common law court. *Knight* v. *Campbell*, 62 Barb. (N. Y.) 16; *Dawson* v. *Horan*, 51 Barb. (N. Y.) 459.

2. But if the Constitution requires a justice of the peace to have a common law jury the law is sufficiently broad to give him that authority. He has the right to issue the *venire* under his hand and seal, and the jurors are to appear before him, all challenges are tried by him, he directs the constable to summon talesmen, he swears the jury, and when the jurors have agreed on their verdict they deliver the same publicly to the justice and the justice gives judgment thereon forthwith and issues execution accordingly. The mere fact that the law requires him to enter judgment on the verdict forthwith does not necessarily prevent him from granting a new trial, for the word "forthwith" only directs the entering of the judgment immediately without waiting four days, but if he did we hold that that would not in any way affect

the trial from being a common law trial. The motions that lie between verdict and judgment are not essentially a part of the common law trial by jury. Thus a motion in arrest of judgment could not be had in the case, because there are no pleadings, and even if there were an act abolishing the right of a party to a motion in arrest of judgment it in no way affects his common law trial by jury. Neither does the fact that the jury shall be the sole judges of the facts; and certainly if the justice has the right to instruct them on the law, their decision on the facts in no way deprives a man of his trial by jury. The argument that because a justice cannot grant a new trial he cannot instruct the jury is untenable. If he has the right to regulate the challenges and do all other acts that the statutes prescribe, he certainly has the right to preside at a trial in the capacity of the ordinary judge. 12 Am. & Eng. Encyc. L. 464. And there is authority that holds that he may instruct the jury upon matter of law. *Adams* v. *Clark,* 64 Ga. 648; *Penn Yan* v. *Thorne,* 6 Hill, 326; *Delancy* v. *Nagle,* 16 Barb. (N. Y.) 96.

3. If the jury trial is not a common law jury, then the defendant has a right of appeal, and he can have his constitutional jury in the court above, which is sufficient to gratify the constitutional guaranty, for Congress has full power to establish inferior tribunals without a common law jury, and no one can take exception thereto on the ground that he is deprived of his constitutional right of trial by jury, provided an appeal lies from such tribunals to a court where he can obtain his constitutional jury trial. *Steuart* v. *Mayor,* 7 Md. 500; *Morford* v. *Barnes,* 8 Yerger Rep. 444; *Beers* v. *Beers,* 4 Conn. Rep. 535; *McDonald* v. *Schell,* 6 S. & Rawle, 240; *Emerick* v. *Harris,* 1 Binn. (Pa.) 416; *Work* v. *State,* 2 Ohio St. 296; *Knight* v. *Campbell,* 62 Barb. (N. Y.) 16.

*Mr. Enoch Totten, Mr. J. S. Flannery* and *Mr. W. D. Davidge* for the appellee, the Capitol Traction Company:

1. The appellee is entitled, under the Seventh Amend-

ment to the Constitution of the United States, to a trial by a common law jury, in a court of common law jurisdiction, proceeding according to the course of that law.

By its language, the framers of the Seventh Amendment undoubtedly meant that in all cases involving more than twenty dollars, which, prior to the adoption of the Constitution, had been cognizable by the common law of England, the right of trial by jury should be preserved substantially as it existed at common law. In the case of *Parsons* v. *Bedford*, 3 Pet. 474, Mr. Justice Story gave the following definition of the expression "common law" found in that amendment: "By common law they meant what the Constitution denominated in the third article 'law'; not merely suits which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered; or where, as in the admiralty, a mixture of public law and of maritime law and equity was often found in the same suit." By "common law" is meant "the principles of common law and equity as distinguished and defined in that country from which we derive our knowledge of those principles." *Robinson* v. *Campbell*, 3 Wheat. 222; *Penna.* v. *Bridge Co.*, 13 How. 518.

As justices of the peace, at common law, had no civil jurisdiction, and as the civil pleas and actions of which they have been given jurisdiction by statute were determined, either in the first instance or after removal, in the common law courts of England and by a common law jury, it necessarily follows that, in all cases before justices of the peace where the amount in controversy exceeds twenty dollars, the Constitution has preserved the right of trial by jury substantially as it existed at common law. As to what is meant by a common law jury, see 3 Thomas' Coke's Inst. 500; Miller on the Constitution, 511; *East Kingston* v. *Towle.*

48 N. H. 57; *Copp* v. *Henniker*, 55 N. H. 179; *Work* v. *State*, 2 Ohio St. 299.

It was never seriously disputed that in civil cases, at common law, the jury were the judges of the facts alone and took the law from the court; but how far this applied to criminal cases remained a mooted question in this country until the recent decision of the Supreme Court in the case of *Sparf and Hansen* v. *United States*, 156 U. S. 51.

It is not only the duty of the court to properly instruct the jury as to the law, but it is equally as important that they should be aided in reaching a proper conclusion upon the facts; and where they return a verdict which is contrary to law or unsupported by evidence, it is the duty of the court to set it aside. *Mudd* v. *Burrows*, 91 U. S. 426; *Railroad Co.* v. *Moore*, 121 U. S. 558.

The constitutional requirement of a "trial by jury" is not complied with by merely supplying a jury of twelve men. The jury is only one of the essential elements of a "trial by jury." The other essential is a forum proceeding in accordance with the rules of the common law; where the presiding justice passes upon the competency and admissibility of the evidence, instructs the jury as to the law, and guides them in weighing and resolving the facts; where the advocate is kept within the bounds of legitimate argument, and a wholesome and necessary restraint is placed upon the jury to confine them to the law and the evidence, and to remove their latent prejudices; where the court has the power to direct a verdict for the insufficiency of proof, and to cut down or set aside a verdict that is grossly excessive or unsupported by evidence. *People* v. *Fisher*, 20 Barb. 652.

2. The trial by jury, so-called, prescribed by the act of March 1, 1823, is not a common law trial by jury, and is unconstitutional. To prove that the anomalous tribunal authorized by the act of 1823 is not a common law jury, it will only be necessary to recite its extraordinary functions. These are clearly enumerated in the opinion of Mr.

Justice Bradley in *U. S. ex rel. Brightwood Ry. Co.* v. *O'Neal*, 24 Wash. Law Rep. 406. The jury, so-called, are nothing more than referees or compulsory arbitrators.

A compulsory arbitration is not the jury trial guaranteed by the Constitution. *Copp* v. *Henniker*, 55 N. H. 179. A compulsory and conclusive arbitration is unconstitutional. *People* v. *Haws*, 37 Barb. 440; *Baldwin* v. *Mayor*, 45 Barb. 359; *Rhines* v. *Clark*, 51 Pa. St. 96. If the power of compulsory arbitration exists at all, it may be exercised in every case, and the trial by jury abolished. *U. S.* v. *Rathbone*, 2 Paine C. C. 578.

If Congress can, at one stroke, increase the jurisdiction of justices of the peace from one hundred to three hundred dollars, and compel suitors to submit their rights to the decision of such referees or arbitrators, without appeal to a court of common law jurisdiction, there is nothing to prevent the extension of this jurisdiction to cases involving one thousand or fifteen hundred dollars or more, and thus depriving the citizen in all cases of his constitutional right to a trial by a common law jury.

3. It is not contended that Congress has not the power to create new tribunals for the trial of inferior matters or offences, and to prescribe a form of procedure therein which may not accord with the rules of the common law; nor is it argued that Congress cannot deny the right to a trial by jury in cases which were not so triable at common law. But it is insisted that in all cases involving more than twenty dollars, which, prior to the adoption of our Constitution, were triable in the common law courts, the right of trial by a common law jury in a court of common law procedure has been preserved. Nor can Congress, by merely changing the form of the action, or by referring it to twelve referees or arbitrators and calling them a "jury," evade the express provisions of the Constitution. Cooley's Const. Lim. 505. It has been held, however, in many cases, that it is competent to deny to parties the privilege of a trial by jury

in a court of first instance, provided the right is allowed on appeal. Cooley's Const. Lim. (6th Ed.) 505; *Beers* v. *Beers,* 4 Conn. 535; *State* v. *Brennan's Liquors,* 25 Conn. 277 ; *Curtis* v. *Gill,* 34 Conn. 49; *Reckner* v. *Warner,* 22 Ohio St. 275 ; *Jones* v. *Robbins,* 8 Gray, 329 ; *Hapgood* v. *Doherty,* 8 Gray, 373 ; *Commonwealth* v. *Whitney,* 108 Mass. 5 ; *Steuart* v. *Mayor,* 7 Md. 500. But the correctness of the principle laid down in these cases has been rendered doubtful by the decision of the Supreme Court of the United States in *Callan* v. *Wilson,* 127 U. S. 540, in which an appeal was perfected to the Supreme Court of the District of Columbia after a criminal prosecution in the Police Court.

But in the case at bar no ·appeal to a court of common law jurisdiction has been provided, and a writ of error will not lie. *Maddox* v. *Stewart,* 2 Cr. 515 ; *Denny* v. *Queen,* 3 Cr. 317 ; *Smith* v. *Chase,* 3 Cr. 348; *Fitzgerald* v. *Leisman,* 3 MacA. 6. Nor is there any other means of review. If the justice has jurisdiction, *certiorari* cannot be made to serve the purposes of an appeal or writ of error, or to bring up irregularities in the proceedings. *Harris* v. *Barber,* 129 U. S. 366 ; *Hendley* v. *Clark,* 8 App. D. C. 165.

The hardships attending the form of trial to which it is desired to subject the appellee are forcibly and eloquently set forth in the argument of Charles O'Connor in *Niblo* v. *Post's Admrs.,* 25 Wend. 280.

In conclusion, it is submitted :

(1) If the jury authorized by the act of 1823 are not a common law jury, but are merely arbitrators or referees, then the supposed inhibition of the second clause of the Seventh Amendment does not apply, and an appeal lies from the judgment upon the verdict of such " jury " to the Supreme Court of the District of Columbia.

(2) If they are not a common law jury, and this court shall be of opinion that the act of 1823 authorizing said " jury " does not give a right of appeal to the Supreme Court of the District of Columbia from the judgment on

the verdict of such "jury," then the form of trial pre-scribed is unconstitutional, and the act of 1823, in so far as it authorizes this form of trial, is unconstitutional and void; and, under the Seventh Amendment to the Constitution justices of the peace in this District are without juris-diction of all matters where the value in controversy shall exceed twenty dollars, which, before the adoption of the Constitution, were triable by a common law jury.

Mr. Justice MORRIS delivered the opinion of the Court:

Both of these cases involve the question of the extent of the jurisdiction of justices of the peace in the District of Columbia and of the right of appeal from their judgments.

In the case of *United States, ex rel. the Brightwood Railway Company* v. *O'Neal,* a petition was filed in the Supreme Court of the District of Columbia for the issue of a writ of mandamus to require a justice of the peace to pass upon an appeal bond which had been presented to him for his ap-proval in pursuance of an appeal taken or sought to be taken from a judgment rendered by him upon the verdict of a jury in a suit before him where there had been a trial by jury in accordance with the provisions of the statute law upon the subject, and which bond the justice of the peace had declined to approve or accept solely upon the ground that there was no right of appeal provided by existing law from his judgments in such cases. Upon the authority of some former adjudications of the courts of the District of Columbia, to which there will be occasion to refer hereafter, the writ was refused; but in refusing it the justice of the Supreme Court of the District, to whom the application was made, gave expression to the opinion that his ruling was contrary to his own judgment as to the law.

In the second case, that of *Charles Hof* v. *The Capital Traction Company,* a petition was filed in the Supreme Court of the District of Columbia for a writ of *certiorari* to be issued to a justice of the peace for the removal into that court, for

trial there in the first instance, of a cause pending before the justice of the peace, wherein a jury had been demanded by the plaintiff in the cause before the justice and the justice had issued, or was about to issue, his warrant for the summons. The writ was issued; and a return thereto was made by the justice of the peace. Thereupon there was a motion made to quash the writ. This motion the court denied, and refused to quash the writ; and an order was entered directing that all the proceedings before the justice of the peace should be vacated. But the court likewise refused to order the removal of the cause for trial in that court, presumably in conformity with the decision of this court in the case of *Hendley* v. *Clark*, 8 App. D. C. 165, wherein it was held that no such removal could be lawfully allowed on the ground merely of concurrent jurisdiction. And the cause was apparently left pending before the justice of the peace, either indefinitely arrested in its progress or to be proceeded with, if he could proceed at all, without the intervention of a jury.

The conclusion reached by the learned justice who sat in this case is based, as it is understood, upon the theory that so much of the statute enacted in the premises as authorizes trial by jury before justices of the peace is unconstitutional and void. And it may be added that it was stated to us in argument that, in a suit subsequent to the two now before us, the same learned justice who sat in the first of these two cases has held that the whole legislation of Congress increasing the jurisdiction of justices of the peace beyond the sum of twenty dollars is in violation of the Constitution.

Upon appeal to this court, both of the cases now before us were argued together; and it is plain that the vital question in both is the same—the validity of the legislation of Congress providing for trial by jury in causes pending before justices of the peace. The question is one of very grave importance in the administration of justice in

this District, and is deserving of our most serious consideration. This consideration we have earnestly sought to give to it.

From time immemorial in the jurisprudence of England, from which we have inherited the practice, there has existed and there has been uniformly recognized a difference between "petty debts," or debts of trifling amount, and other claims or demands, with reference to the several legal modes provided for their collection. For while the courts of general jurisdiction at Westminster had cognizance of all ordinary claims and demands, it was not considered appropriate that they should be burdened with the trial of causes involving only inconsiderable sums of money in which the costs of court would amount in most cases to more than the amount or value in dispute, and which would tend seriously to interfere with the peace and quiet of the community if they could all be brought into the courts of general jurisdiction. Consequently, pleas of debt or damage for such petty causes were cognizable in England in the county courts, courts baron, courts of the hundred, or some such minor tribunal of local and limited jurisdiction, proceeding in a more summary and informal manner than the courts of the common law at Westminster, but subject to some occasional power of control by these latter.

A similar difference or distinction of procedure seems to have characterized the colonial jurisprudence of all our American colonies. In Maryland as early as the year 1715 we find enactments of the colonial legislature vesting in the justices of the peace, who had already inherited from England the petty criminal jurisdiction from which they derived their designation, the cognizance also of controversies for "petty debts" which had been vested in the minor courts of the mother country. The jurisdiction so given was enlarged or modified by several subsequent statutes, until on December 29, 1791, the legislature of the

State of Maryland, which in the meantime had adopted the Declaration of Independence, its own constitution and the Constitution of the United States, superseded all previous legislation on the subject by the adoption of an act entitled "An act for the speedy recovery of small debts out of court," by which authority was vested in justices of the peace to hear and determine all controversies wherein the debt or damages did not exceed ten pounds current money, or one thousand pounds of tobacco, which, as is well known, also served for the purpose of currency in those days. And the act went on to provide for an appeal by either party to the county court, then the ordinary court of general jurisdiction, in all cases where the debt or damage exceeded twenty shillings common money or one hundred pounds of tobacco.

This act was in force in the State of Maryland when, by the cession of that State, the portion of it now known as the District of Columbia became the property of the Federal Union, and subject to the exclusive legislation over it vested by the Constitution of the United States in the Congress of the Union, as also more directly subject to the guarantees of that Constitution.

By the act of February 27, 1801 (2 Stat. 103), by which Congress assumed the jurisdiction over the District devolved upon it by the Constitution, it provided a judicial system for the District, among the provisions of which was one, contained in the eleventh section of the act, to the effect that justices of the peace should "have cognizance in personal demands to the value of twenty dollars, exclusive of costs." The limitation of twenty dollars, here specified, it may well be surmised, was suggested by the Seventh Amendment to the Constitution of the United States, in which it was ordained that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." In this act of Congress there was no provision for an appeal, such as

there had been in the previous act of Assembly of Maryland.

By an act of March 1, 1823 (3 Stat. 743), entitled "an act to extend the jurisdiction of justices of the peace in the recovery of debts in the District of Columbia," Congress enlarged the jurisdiction of these justices to controversies not involving more than fifty dollars of value; prohibited the circuit court, the then existing court of general jurisdiction, from holding original cognizance of any causes not involving more than fifty dollars; but provided that, in all causes involving more than five dollars of value, either party might appeal from the judgment of the justice of the peace to the circuit court, where the cause should be proceeded with *de novo*, yet might there also be determined summarily, unless a trial by jury should be demanded, in which case the parties should be entitled to such trial. Then evidently as an afterthought and by way of addition to the original act or bill, no doubt in deference to the requirements of the Seventh Amendment to the Constitution, Congress added other sections, in which it provided specifically and in some detail for the empaneling of a jury by the justice of the peace in all cases involving more than twenty dollars of value, upon the demand of either party to the cause.

This act as modified by an act of February 22, 1867, which raised the limit of the jurisdiction of justices of the peace from fifty dollars to one hundred dollars of value (14 Stat. 101), was incorporated into the Revised Statutes of the United States for the District of Columbia, as sections 997 to 1027; and it is the constitutionality of this act, or of these sections of the revision, so far as they provide for trial by jury before justices of the peace, that is now in question.

But it is proper to note that, by a yet more recent act, that of February 19, 1895 (28 Stat. 668), Congress has still further enlarged the jurisdiction of the justices of the peace to causes involving not more than three hundred dollars of

value; has made the original jurisdiction of the justices of the peace exclusive in causes involving not more than one hundred dollars; and has expressly declared that, in causes involving more than one hundred and not exceeding three hundred dollars, there shall be concurrent jurisdiction in the justices of the peace and in the Supreme Court of the District of Columbia. By this act it was further provided that "where the sum claimed exceeds twenty dollars either party shall be entitled to a trial by jury." But as no specific provision was made for such trial by jury, and as there is no further reference to that subject in the act, we must presume that the trial by jury thereby intended was that provided by the act of 1823, and that it was to be conducted in accordance with the provision of that act.

The act of 1895 also proceeds to enact in its third section "That no appeal shall be allowed from the judgment of the justice of the peace in any common law action unless the matter in demand in such action or pleaded in set-off thereto shall exceed the sum of five dollars, nor unless the appellant, with sufficient surety, approved by the justice, enters into an undertaking to pay and satisfy whatever final judgment may be recovered in the appellate court."

From all which it is apparent that the matter of trial by jury in causes authorized by statute to be instituted before justices of the peace, and the matter of appeal from the judgments of the justices, remain substantially as provided in the act of 1823, with only the superadded requirement of a bond or undertaking in the case of an appeal.

But it should also be noticed that, both by the act of February 22, 1867, and that of February 19, 1895, power was given to the Supreme Court of the District of Columbia to make rules and regulations for the conduct of cases before the justices of the peace. The language of the act of 1867 is that the court shall "make and establish rules of practice, and prepare and publish forms of pleadings for bringing all forms of actions and the trial thereof before

said justices of the peace," and that of the act of 1895 is that the court "shall make and establish such additional rules of practice and prescribe forms of process and proceedings rendered necessary by the act, and the same from time to time to alter and amend as might be deemed advisable." How far the Supreme Court of the District has exercised the authority so vested in it, we are not informed, and it is not perhaps material here to ascertain.

So much of the act of 1823, providing for trial by jury before the justices of the peace, and for appeals from their judgments, as has been incorporated into the Revised Statutes for the District of Columbia, modified by subsequent legislation, is as follows, although the order of arrangement in the revision is somewhat different from that in the original act, a circumstance which may not be without some weight in our consideration, but by no means of controlling importance:

"SEC. 1009. In every action where the sum demanded shall exceed twenty dollars, it shall be lawful for either of the parties to the suit, after issue joined, and before the justice shall proceed to inquire into the merits of the case, to demand of the justice that such action be tried by a jury.

"SEC. 1010. Upon such demand the justice shall issue a *venire*, under his hand and seal, directed to any constable of the District, commanding him to summon twelve jurors, to be and appear before the justice issuing such *venire*, at such time and place as shall be therein expressed.

"SEC. 1011. The jurors thus summoned shall possess the qualifications and be subject to the exceptions provided for jurors by law.

"SEC. 1012. If any of the persons summoned and returned as jurors shall not appear, or shall be challenged or set aside, the justice before whom the cause is to be tried shall direct the constable to summon, and return forthwith, talesman, so as to make up the number of twelve, after all

10 Ct. App.—16

causes of challenge shall have been disposed of by the justice.

"SEC. 1013. The twelve persons shall be the jury who shall try the cause, each of whom shall be sworn by the justice, well and truly to try the matter in difference between the parties, and a true verdict to give, according to evidence.

"SEC. 1014. The jury being sworn, shall sit together, and hear the proofs and allegations of the parties in public.

"SEC. 1015. (Provides for an oath to the constable to keep the jury together.)

"SEC. 1016. When the jurors have agreed upon their verdict, they shall deliver the same, publicly to the justice.

"SEC. 1017. The justice shall give judgment thereon forthwith, and may issue execution accordingly."

.          .          .          .          .          .

"SEC. 1027. When the debt or demand exceeds five dollars, and either the plaintiff or defendant shall think himself aggrieved by the judgment of a justice of the peace, he shall be at liberty to appeal to the next term of the Supreme Court of the District; and the appeal shall be there heard and determined as provided in Section 774 to Section 779, inclusive.

"SEC. 1028. No appeal shall be allowed from a judgment of a justice of the peace, unless the appellant, with sufficient surety, approved by the justice, enters into an undertaking to satisfy and pay all intervening costs and damages arising on the appeal." (*This section, as it appears, has been superseded by the somewhat more stringent provision heretofore cited from the act of 1895.*)

The sections 774 to 779, to which reference is here made, or at least two of them, Sections 775 and 776, it is proper also to cite for the better understanding of the subject:

"SEC. 775. The Supreme Court (of the District) shall in a summary way hear the allegations and proofs of both parties, and determine upon the same according to law and

the equity and right of the matter, at the same term, without further continuance or delay, unless it shall appear to the court that further time ought to be given to the party applying for the same.

"SEC. 776. Either of the parties may demand a trial by jury, or leave the cause to be determined by the court, at their election."

These sections also are taken from the act of 1823.

It is upon the theory that the appeal, provided in the foregoing Section 1028 of the Revised Statutes, and in the act of 1823, from which the section is taken, lies as well in causes tried before a justice of the peace by a jury as in those that are tried by him without a jury, that the proceedings in the first of the two suits now before us are based; while in the second of these two suits, as already stated, the constitutionality of all the provisions regarding trials by jury before justices of the peace is directly brought in question.

Very soon after the passage of the act of March 1, 1823, in fact in the very same year, its scope and construction became the subject of judicial investigation; and five cases are found in the old circuit court reports, wherein the effect of the statute was sought to be ascertained.

In the first of these cases, which was that of *Sherburne* v. *Semmes*, 2 Cranch C. C. 446, there was an appeal from the judgment of a justice of the peace rendered in pursuance of the verdict of a jury; and one of the questions now before us was directly presented. Having doubt in regard to the jurisdiction, the court continued the case for argument. But there is no further mention of it in the reports; and it seems never to have been taken up again. The notice of the case is very brief; and we find in it neither argument of counsel nor any opinion by the court.

In the next year (A. D. 1824), the case of *Davidson* v. *Burr*, 2 Cranch C. C. 515, came before the court upon a similar appeal under similar circumstances. The case

seems to have been fully argued, although the report of it, like most of the reports in Cranch, is exceedingly brief, and confined to a statement of the point decided. "It was objected that a justice of the peace trying causes by a jury was a judge of an inferior court of the United States, and therefore ought to be appointed *quamdiu se bene gesserit*; and not having been so appointed, but holding his office only for five years, he was not a competent judge, and had no jurisdiction of the cause. It was also suggested that a cause once tried by jury could not at common law be tried again by jury in another court; nor could the fact be tried again by the court." The report goes on to say that "the court (one of the three justices however dissenting) was of opinion that the justice had jurisdiction; but that under the Seventh Amendment of the Constitution of the United States, which declares that in suits at common law no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law, there cannot be a trial by jury in this court of a cause which has been tried by a jury before a justice of the peace. This cause has been tried by jury before the justice; and by the rules of the common law, it cannot be re-examined by a jury in any other court, nor by the judges without a jury."

Mr. Chief Justice Cranch added for himself the following: "A writ of error, upon a bill of exceptions, will only lie to a court of record. The proceedings of courts not of record can, by the common law, only be brought up by *certiorari*, if brought up at all, and not by appeal."

And with regard to the constitutional question raised, he said "that if the judge was such a judge of an inferior court of the United States as is intended by the third article of the Constitution of the United States, the same article fixed the tenure of the office; and it could not be altered by an act of Congress; and that if he was not such a judge, then the argument from the Constitution did not apply to his case."

The next case, that of *Maddox* v. *Stewart,* 2 Cranch C. C. 523, followed soon afterwards, and at the same term of the court. It was likewise an appeal from the judgment of a justice of the peace rendered upon the verdict of a jury. The report merely states that " the court (the same justice dissenting who had dissented in the previous case) dismissed the appeal upon the ground that a fact once tried by a jury cannot be re-examined otherwise than according to the rules of the common law, and that a second trial by jury in another court is not according to the rules of the common law."

The case of *Denny* v. *Queen,* 3 Cranch C. C. 217, followed in the year 1827. Here also was an appeal from a judgment of a justice of the peace, rendered in pursuance of the verdict of a jury It seems that "a paper was sent up purporting to be a prayer to instruct the jury as to the law arising upon certain facts therein stated, but which was not certified as a bill of exceptions." The action of the court thereon is thus stated :

" The court (*nem. con.*) said that as the court had heretofore decided, that when a cause had been tried by a jury before a justice of the peace we could not constitutionally try the cause again by a jury in this court and the court could not try it without a jury, there was not left for this court upon the appeal anything but the law of the case, as it appeared before the justice; but the act has not prescribed the mode by which the question of law should be made to appear to this court. It certainly was not now regularly before the court." And the appeal was dismissed.

Induced, probably, by an apparent reservation in the last sentence of the foregoing opinion, another, and, it would seem, a final attempt was made to sustain an appeal from the judgment of a justice of the peace rendered upon the verdict of a jury in the case of *Smith* v. *Chase,* 3 Cranch C. C. 348, in the year 1828. Here, at the trial before the justice of the peace, " the defendant tendered a bill of excep-

tions to an opinion of the justice upon a point of law, which the justice refused to sign;" and there was a motion made to compel him to sign it. But the court (one of the justices, however, doubting, but not dissenting) held that a writ of error would not lie to the judgment of a justice of the peace upon the verdict of a jury, and that he was not bound to sign a bill of exceptions; and accordingly the motion was overruled.

In an able and elaborate opinion filed in this cause by Mr. Chief Justice Cranch—for himself, alone, however, as he takes pains to say, and not for the court, or even for the majority of it—the questions at issue, apparently for the first time in the history of this litigation, are discussed at length: and to this opinion, as the subsequent practice for nearly seventy years seems to have been based upon it, we will have occasion to recur in the sequel.

We have no record of any further agitation of the subject for about fifty years. But in the year 1876 the question of the right of appeal in such cases was raised again in the Supreme Court of the District of Columbia in the case of *Fitzgerald* v. *Leisman*, 3 MacA. 6; but it was speedily disposed of upon the authority of the cases above cited from Cranch's reports and in accordance therewith. Now again the question is raised in a new shape, and it must be confessed under a new light; and the great enlargement of the jurisdiction of the justices of the peace by the acts of Congress of 1867 and 1895, and the greater frequency of recourse to trial by jury for determination of the issues made before them, give enhanced importance to the controversy.

1. That the right of trial by jury, secured by the Seventh Amendment of the Constitution of the United States in all suits at common law, where the value in controversy exceeds twenty dollars, means the right to trial by jury as known to the common law at the time of the adoption of the Constitution, with proceedings therein in accordance

with the forms of the common law, we cannot regard as now open to question. Such is the apparently unanimous tenor of all the authorities on the subject. *Parsons* v. *Bedford,* 3 Pet. 433; *Justices* v. *Murray,* 9 Wall. 274; *East Kingston* v. *Towle,* 48 N. H. 57; *Work* v. *State,* 2 Ohio St. 299; Cogley's Principles of Constitutional Law, p. 250; Miller on the Constitution, p. 511. Nor do we regard it as open to question that at common law the province of a jury is limited to the determination of controverted questions of fact, put in issue by the pleadings of parties, and which are to be ascertained by the jury from such evidence as is admitted by a presiding court or judge to be presented to them, and in accordance with such instructions as to the law which such court or judge may give to them. This has always been held to be the law in civil cases; and for us it has now also been finally established as the law in criminal cases by the decision of the Supreme Court of the United States in the recent case of *Sparf* v. *The United States,* 156 U. S. 51.

The function of a jury at common law may now, therefore, be regarded as perfectly well settled. It is confined under the guidance of a court to the determination of questions of fact duly submitted to it, by the determination of which the court is enabled to reach a judgment between the parties. And if this be its proper and only function, it is plain that the jury can never be substituted for the court, and that the court cannot delegate or abandon to it the control of the matter of the introduction of testimony or the ascertainment of the rules of law applicable to the case pending before it. The jury can never be permitted or authorized to take exclusive control of a case. On the contrary, it must take its law from the court, and it must consider no evidence but that which is allowed by the court and submitted to it.

When, therefore, in the opinion to which we have referred as filed by Mr. Chief Justice Cranch in the case of *Smith* v.

*Chase, supra,* that learned jurist joined in the judgment of
the court that there could be no appeal, under the act of
Congress of 1823, from a judgment of a justice of the
peace in a cause tried before such justice by a jury, for the
reason that the Seventh Amendment of the Constitution of
the United States prohibited the re-examination of a fact
tried by a jury otherwise than according to the rules of the
common law, and yet at the same time denied to the jury
authorized by that act the attributes of a common law jury,
it is plain that he had not sufficiently considered the incon-
sistent position thereby created.    For the constitutional
amendment must necessarily be construed to refer to a jury
of the common law; and if the jury provided by the act
of 1823 was not a jury of the common law, the amend-
ment did not prohibit the re-examination of the facts found
by it.

The learned chief justice said in his opinion: "It will
be perceived that upon a demand of trial by jury, the cause
is taken entirely out of the hands of the justice.    He is
obliged to summon and swear the jury and to render judg-
ment according to their verdict.  No authority is given to him
to instruct the jury upon matter of law or fact, nor to set aside
their verdict and grant a new trial.    It seems to me that
he acts as ministerially in entering the judgment upon the
verdict as the clerk of this court does in entering its
judgments.   The jury are not bound by the opinions of the
justice upon matters of law; nor do I preceive that he has
a right to say what evidence they shall hear.    If they dis-
regard his opinion as to the law, or hear evidence which he
disapproves, no new trial can be granted.    They are to try
the matter in difference between the parties, whether it be
matter of law or matter of fact.    The jury seems to be a
complete substitute for the justice as to the trial of the cause.
If a jury be not required by either party the justice is to
decide the fact as well as the law.   If a jury be demanded,
they are to decide the law as well as the fact."

If this theory of the power and functions of the jury authorized to be summoned by the justice of the peace, under the act of 1823, be correct, that jury is an irresponsible mob, and not a jury of the common law.    It is simply a body of compulsory triors or referees, the abnormal creation of an abnormal statute, and not the jury required by the Constitution, and to whose determination of questions of fact the Constitution gives the attribute of finality.    But we fail to find any support for this theory either in the act itself or any subsequent legislation on the subject.

Undoubtedly and beyond all question, in framing the act of March 1, 1823, Congress had in mind the Seventh Amendment of the Constitution; and it was the intention of that body to provide a constitutional common law jury for the trial of issues before justices of the peace    If it did not succeed in providing such a jury, it is either because the act is radically defective and insufficient in its terms to give effect to the manifest legislative intent, or else because it was not competent for Congress, under the Constitution, to provide a common law jury for the courts of justices of the peace.

The statute belongs to a class in favor of which every intendment is to be made.    It is not a statute in derogation of common law or common right.    On the contrary, it is a statute intended to extend the domain of the common law and to facilitate the administration of justice.    It may be that it was unwise to enlarge the jurisdiction of justices of the peace beyond the limit prescribed by the act of 1801; and it may be that it will yet be found expedient to transfer to municipal courts presided over by judges with fixed salaries and better versed in the law the civil jurisdiction now vested in justices of the peace, just as it has been found expedient to transfer to police courts the petty criminal jurisdiction which they formerly exercised.    But thus far it has evidently been the policy of Congress to enlarge and extend the civil jurisdiction of the justices, and it is the

duty of the courts in the construction of the statutes, as long as that policy lasts, to seek to give it effect and not to nullify it.

The court of the justice of the peace for the cognizance of petty cases, it must be remembered, was part of our judicial system at the time of the adoption of the Federal Constitution, and had been such for nearly two centuries or upwards. The petty courts of England, to which it corresponded, had been in existence from time immemorial. This court, although limited in the extent of its jurisdiction, was a very important factor in the administration of justice; and the Constitution of the United States did not fail to take notice of it; for in the reservation of the right of trial by jury in all cases involving more than twenty dollars of value, it evidently intended to leave undisturbed and unaffected by its provisions the petty civil jurisdiction exercised at the time by the justices of the peace. And when the Congress of the United States, for the purposes indicated in the eighth section of the First Article of the Constitution, assumed jurisdiction of the District of Columbia, it took it, and it was evidently the intention of the Constitution that it should take it, with its then existing judicial system, subject to such modification thereof as might thereafter be made. The court of the justice of the peace within its narrow and restricted limits was as much a part of that judicial system, as was the court of general juisdiction. It was not, of course, one of the courts of the United States to which any part of the judicial power vested in the Federal Government by the Third Article of the Constitution, could be given; for that article contemplated only the courts of general jurisdiction. But it was a court which, under its general power of legislation over the District of Columbia, the Congress might well adopt or establish. Its establishment was within the usual scope of such legislative power.

Such being the power of Congress, and it being the plain

unmistakable purpose of that body to provide a common
law jury for the court of the justice of the peace in cases in-
volving more than twenty dollars of value, the question
recurs whether the terms of the act of March 1, 1823, were
sufficient to effect the purpose. It was asserted by Chief Jus-
tice Cranch, in his opinion, to which we have referred, that
the jury provided by the act, while evidently regarded by
him as a common law jury, was fatally defective in the
constituent characteristics which we regard as essential to
such a jury. But the act of Congress, in our opinion, does
not justify any such conclusion. There is nothing in the
act to warrant the deduction that the justice of the peace
may not instruct the jury in the questions of law arising in
the case, or that he may not control the matter of the in-
troduction of evidence, or that he may not even set aside
the verdict of the jury and grant a new trial. Even if the
act of Congress were entirely silent on the subject, the rea-
sonable inference would be that, when the legislature pro-
vided the court of the justice of the peace with a jury, it
intended that such jury should act in accordance with the
course of the common law, and should serve precisely the
same purpose which it serves in the courts of common law.
When Congress says that in special cases there must be
trial by jury, it must be taken to mean what it says; and
it can only mean a jury of the common law; because we
know of no other jury in our legal proceedings, except as
the result of special statutory provision.

But we are not left entirely to inference in the matter.
The statute plainly contemplates that, in the conduct of the
trial by jury, the justice of the peace must exercise judicial
functions. He undoubtedly exercises judicial functions in
the empaneling of the jury; for it is distinctly and expressly
provided that all causes of challenge must be disposed of by
the justice. The justice is required to swear the jury to try
"the matter in difference between the parties, and a true
verdict to give according to evidence." Now, a "verdict"

is the conclusion of a jury upon controverted questions of fact; it is a conclusion of fact, and not of law; and it is a conclusion which the statute commands the jury to give " according to evidence." Evidence and testimony do not mean the same thing Evidence is such testimony as a court or presiding officer may regard as competent and may admit as proof under a pending issue. Plainly under the statute it is not for the jury, but for the justice, to control the introduction of testimony, and therefore necessarily to rule upon the competency of the testimony, which is offered to be adduced. And this is the main function of a judge or presiding officer in trial by jury. Instruction upon the law is only given when called for by the parties, or deemed proper by the presiding officer himself to be given. And the fact that the statute commits it to the jury " to try the matter in dispute between the parties," instead of authorizing them to try the issue joined between the parties, as the usual expression is in the courts of the common law, cannot be permitted to weigh in the balance for one moment. Congress simply used the expression that was most readily intelligible to the common mind and to the court of a justice of the peace.

It may be noted that, when the Congress provided for trial by jury in the Police Court of the District of Columbia, which in that regard stands in no different relation to the common law from the courts of the justices of the peace, it equally failed to provide for any express power in the judges of that court to control the jury. See act of July 23, 1892 (27 Stat. 261), and March 3, 1891 (26 Stat. 848). And yet it is properly the practice of those judges to control the admission of evidence, and to instruct their juries upon the law, as also to award new trials.

If it be objected that the justices of the peace, being often laymen and unacquainted with the law, are incompetent to instruct the jury upon questions of law, this is a consideration which might properly have weight with the

appointing power and with the executive and legislative branches of government. It can have no weight whatever in the construction of such a statute as that now under consideration. Moreover, we know of no statute which requires the appointment of ignorant and incompetent persons as justices of the peace; and the common law certainly does not regard ignorance as a qualification for their office. They are expressly given jurisdiction to try the causes that are assigned to them both *upon the law* and the facts, and even to apply the principles of equity; and it seems to be no greater jurisdiction to instruct the jury upon the law than to apply the law themselves. It must be remembered that his jurisdiction in all cases is over " petty causes," in which prompt decision and determination according to the ordinary rules of average reason are more required for the peace and good order of the community than technical and rigid accuracy in the statement of legal propositions.

It can, therefore, scarcely be controverted with reason that the act of Congress of 1823 provided for the court of the justice of the peace a common law jury, with all the qualifications of such a jury, if it was competent for it, under the Constitution, so to provide. And it is in this question of the constitutional power of Congress so to provide that the gist of this controversy lies. The question then is narrowed down to the inquiry whether, in legislating for the District of Columbia, it was competent for the Congress of the United States to provide for the empaneling of a common law jury in the court of a justice of the peace for the determination of questions of fact arising in suits instituted before such justice.

It seems to us that the question should rather be: Why is it not competent for Congress so to provide? For the difficulty would seem to be, not to find the requisite authority in Congress, but to find adequate reason for the denial to it of such authority.

To Congress has been committed by the Constitution the

power of exclusive legislation over the District of Columbia; and it has been frequently decided that this means all proper and legitimate legislation not prohibited by the Constitution and not inconsistent with our republican institutions. *Stoutenburgh* v. *Hennick*, 129 U. S. 141; *De Geofroy* v. *Riggs*, 133 U. S. 258; *Gibbons* v. *District of Columbia*, 116 U. S. 404; *Loughborough* v. *Blake*, 5 Wheat. 317. The collection of petty debts through the instrumentality of tribunals of a limited jurisdiction, proceeding in a more or less summary manner, and not in precise accordance with the methods of the ordinary courts of general jurisdiction, may be said to constitute part of our common law. As we have seen, it has constituted an integral portion of our system of jurisprudence from time immemorial. Undoubtedly it is competent for the legislative authority to regulate this judicial instrumentality. It is competent for Congress to prescribe its rules of practice and the course of its procedure. And if the legislature may authorize the justice of the peace to decide both law and fact in these petty controversies, when he sits alone without a jury, as no one questions that he may properly do, it is difficult to see why he may not be authorized by the legislative power to call in a jury to aid him in the determination of matters of fact, reserving matters of law to himself. It is difficult to see why the subordination of his methods and of his summary powers to the methods of the common law by the introduction into the proceedings before him of a common law jury, should be contrary to the common law or violative of any constitutional or other right. To assimilate the summary methods of the justice of the peace to the more regular and more orderly methods of the courts of common law, would seem to be in the line of constitutional requirement rather than in antagonism to it.

The only plausible objection to this position is that it seems to tend to place the courts of the justices of the peace on the plane of courts of the United States and to make

the justices themselves judges of courts of the United States, when, in consequence of their limited tenure of office, neither they nor their courts could be recipients of the judicial power of the United States under the Third Article of the Constitution. But this objection we regard as plausible rather than substantial.

The court of the justice of the peace is most undoubtedly in a certain sense, a court of the United States, and he is himself a judge of such a court. But the courts of the United States referred to in the Third Article are the courts of general jurisdiction, not the exceptional courts of casual occurrence or limited jurisdiction used merely as adjuncts in the administration of the law. It does not seem to be necessary to have recourse to the distinction taken in the case of *Canter* v. *Insurance Co.*, 1 Pet. 511, between legislative and constitutional courts; for the Constitution itself, in giving the Congress general power of legislation over the District of Columbia, must be presumed to have intended that Congress should deal with the District substantially in accordance with the system in vogue both in the Colonies and in England at the time of the Declaration of Independence and in the several States of the Union at the time of the adoption of the Constitution; and when it referred generally to the judicial power of the United States and to the courts created or to be created for its exercise, it meant such judicial power as was exercised by the courts of general jurisdiction at Westminster, and the courts authorized to be established were similar courts of general jurisdiction. It was not intended thereby to affect in any manner the legislative authority over the petty tribunals in the District of Columbia that had taken or were intended to take the place of the English county courts and courts baron.

To call the justice of the peace a judicial officer, rather than a judge, does not alter the situation in any manner. The fact remains that he is a judge, a judge both of law

and fact, empowered to hear and judicially to determine legal controversies, a judge with wide powers and great responsibilities within the limited scope of his jurisdiction. But his court, being in fact a court of limited jurisdiction, is not such a court as was contemplated in the Third Article of the Constitution as a depositary of the judicial power of the Federal Union. Consequently to assimilate his procedure to that of the courts of common law, is not in violation either of the letter or the spirit of the Constitution.

This same question was raised in the case of *Davidson* v. *Burr*, 2 Cranch C. C. Rep. 515, heretofore referred to, and seems to have been settled in accordance with the views here expressed.

It seems to us, therefore, that there is no constitutional inhibition that would prevent Congress from providing a common law jury for the courts of justices of the peace; and inasmuch as it is plain that it was the legislative intention in the act of 1823 so to provide, and as the terms used in the act are sufficient for the purpose, the conclusion would necessarily follow that the act of March 1, 1823, was a valid and constitutional exercise of legislative authority. The jury provided by that act being a common law jury such as was contemplated by the first clause of the Seventh Amendment of the Constitution, the second clause of the same amendment, which ordains that "No fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law," is likewise applicable to the case, and must be held to preclude any appeal from the judgment of a justice of the peace in any case tried before him by a jury pursuant to the provisions of the act of 1823. The rules of the common law in such cases allow of re-examination only upon bills of exceptions, or through motions for a new trial or in arrest of judgment; and inasmuch as there is no provision of law for the removal of causes to an appellate

court from the court of the justice of the peace upon bills of exceptions, there is no warrant for re-examination in such cases in the courts of general jurisdiction.

The right of appeal, which is provided by section 1029 of the Revised Statutes of the District of Columbia from the judgments of justices of the peace to the Supreme Court of the District, and which section, if considered alone and without regard to the context, might be assumed to authorize appeals from all judgments of these justices in controversies involving more than five dollars of value, whether rendered upon the verdict of a jury or after exclusive hearing by themselves without a jury, must be construed in the light of the statute itself and of the constitutional inhibition, to extend only to those cases in which Congress could properly give the right, and those cases would be such only as are tried by the justices without a jury.

Section 1029 is taken from the act of March 1, 1823, and the collocation in that act of the special provision, which has been incorporated into this section, shows plainly that the right of appeal therein provided for was intended to be referable exclusively to the judgments to be rendered by the justices themselves without a jury. It follows immediately upon the provisions of the act conferring jurisdiction upon the justices, and wherein they are authorized to act without a jury. As remarked by Mr. Chief Justice Cranch, in the opinion to which we have referred, the portion of the act providing for trial by jury, when such trial should be demanded, was an addition to the original draft of the act. "The seventh section of the act," he says, "when reported, did not contemplate a trial by jury before the justice. Although this circumstance is not a legitimate ground of construction, yet it corroborates the construction drawn from the language of the act itself, which, in its letter as well as in its spirit, applies only to those cases in which the act of the justice is the real cause of the grievance."

During the period of seventy years for which the act of 1823 has been in force, either as originally enacted or as incorporated into the Revised Statutes, the course of procedure thereunder has been as established by the decisions of the old Circuit Court of the District of Columbia, to which reference has been made. Appeals have been entertained only from the judgments of justices of the peace, when they have acted themselves as judges both of law and fact, without a jury; no appeal has ever been entertained from judgments of the justices rendered upon the verdict of a jury. To overthrow this practice of seventy years and the construction of the statute upon which it is based, the error of that construction should be made very plainly to appear. In order to show that error and to sustain the right of appeal from the judgments of the justices of the peace in all cases, whether rendered upon the verdict of a jury or otherwise, a construction must be put upon the statute which would introduce a monstrosity into our law, a jury which is no jury, but a farce and a fraud, a delusion and a snare, a stone given when bread was asked for. This we cannot regard as the legitimate construction of the act. It would certainly be an utter nullification of its scope and purpose and of the intention of Congress in its enactment; and, as we think has been shown, no such construction is demanded in order to harmonize the act with the Constitution. On the contrary, we regard such construction as antagonistic both to the letter and the spirit of the Constitution.

In the case of *Callan* v. *Wilson*, 127 U. S. 540, the Supreme Court of the United States, citing and reviewing several cases to the contrary and disapproving them, held that, when trial by jury is guaranteed by the Constitution, it is the requirement of that instrument and the dictate of reason that such trial should be had at as early a stage of the proceedings as might conveniently be; and that it did not comply with the constitutional requirement to give such trial only on appeal to a superior court of general jurisdiction

after trial and judgment upon summary process in a subordinate court, in that case the Police Court of the District of Columbia.   It was held that a man should not first be tried and condemned, and only then, as the condition and result of an appeal to the higher tribunal, given his constitutional right of trial by jury.

The case of *Callan* v. *Wilson*, it is true, was a criminal case; but in this regard there is absolutely no difference whatever in principle between civil and criminal cases. When the Constitution says that, in suits at common law, where the value in dispute exceeds twenty dollars, the right of trial by jury shall be preserved, it would be no more than a mockery of our fundamental law to hold that the first trial of the issue shall be a mock trial, with a thing called a jury but which is no jury, and the real trial, the trial by jury authorized and required by the Constitution, should be postponed to some subsequent stage of the proceedings, after judgment has been rendered, and execution is liable to issue, and property is liable to be taken; and that even then the constitutional right of the party shall only be allowed on condition that he appeals and enters into bond to pay the future judgment that may be rendered against him in the appellate court.   It seems to us that this would be a juggling with justice, and an evasion of the Constitution. Congress clearly did not intend any such thing in this case; and yet, if the jury provided by the act of 1823 is not a common law jury, but an organized mob of compulsory referees, then the construction of the act which would lead to such a result would undoubtedly convert the enactment into a piece of legislative jugglery.

But the whole argument in this regard seems to be based upon some theory of an absolute right of appeal in all these cases to a tribunal of the common law.   Objection is made, not so much to the jurisdiction conferred upon the justice of the peace, as to the denial of the right of appeal from his judgments by the intervention of a jury in his court or by

any other cause whatever. And it might be inferred from the argument that the right of appeal was an inalienable right and part of the " due process of law " secured to us by the Constitution of the United States, by Magna Charta, and by the dictate of natural justice.

But there is no such absolute right of appeal. Appeal is unknown at common law. Even a bill of exceptions, by which alone a cause at common law may in general be reviewed in an appellate court, is the creation of statute law, and was given by the statute of Westminster 2. In our country, where the judicial system, notwithstanding apparent resemblances, differs radically from that of England, the right of appeal has always been recognized as the creature of statutory enactment, subject not only to be regulated and even taken away by such enactment, but even requiring express provision of law for its existence. Such is the case even with a tribunal so purely appellate in its character as the Supreme Court of the United States, which has itself distinctly and repeatedly held that it can exercise only such appellate power as is given it by Congress. *Baltimore & Potomac R. Co.* v. *Grant*, 98 U. S. 398; *McKane* v. *Durston*, 153 U. S. 684, 687; *Andrews* v. *Swartz*, 156 U. S. 272, 275; *Durousseau* v. *United States*, 6 Cranch, 307.

We conclude that the so-called right of appeal is not an absolute or inalienable right of parties, but that it may be given, regulated, or taken away by act of Congress without violation of any inherent right.

The only alternative to the conclusion to be deduced from the views here expressed is that which would hold as unconstitutional and void all the enactments of Congress that purport to confer upon justices of the peace jurisdiction in civil causes over controversies involving more than twenty dollars of value; and we understand that this conclusion has in fact been held by one of the justices of the Supreme Court of the District in a cause subsequent to the two now under consideration in this court. And this conclusion

would certainly be the logical deduction from the argument that Congress could not provide a common law jury for the court of a justice of the peace. For the jurisdiction conferred by statute upon the justice of the peace to try causes involving more than twenty dollars of value is to try them with a common law jury when a jury is demanded by either of the parties; and if he cannot summon such a jury upon such demand, he has no authority at all to try the causes. The justice, of course, may proceed without a jury, if a jury is waived; but if a jury is demanded, his jurisdiction to proceed instantly ceases.

This conclusion would not only affect the title to numerous lots of ground in the District of Columbia, which have been transferred upon writs of execution, but would likewise paralyze the administration of justice in this District in all causes involving more than twenty dollars and not more than one hundred dollars of value; for under such a conclusion there would be no tribunal in the District of Columbia competent by law to take cognizance of such causes. It behooves us to pause before we sanction such a result. We do not find it necessary to adopt the course of reasoning that would necessarily, in our opinion, lead to it.

We may add that, if the continued exercise of the practice which has prevailed in the District for upwards of seventy years has become a source of hardship by reason of the enlarged jurisdiction conferred upon the justices of the peace by the acts of 1867 and 1895, and if it has become inexpedient that these justices should deal with the causes by these acts committed to ,their cognizance without the appellate supervision of the courts of common law, it is for Congress, not for the courts, to apply the remedy. But it may be remarked that, by virtue of the authority conferred by the two acts cited upon the Supreme Court of the District of Columbia to make rules and regulations for the conduct of causes before justices of the peace, that court may greatly mitigate the evil, if evil there is in the practice.

Entertaining the views which we have here expressed, not without the hope that opportunity may be found to have them reviewed and corrected, if there is error in them, by our tribunal of last resort, especially as there is dissent in this court and the views expressed are only the views of a majority of the members of the court, we are constrained to affirm the order appealed from in the first of the two causes before us, and to reverse the order in the second cause.

The decision of this court, then, is that the order of the Supreme Court of the District of Columbia refusing to issue the writ of *mandamus* in the cause of the *United States, ex rel. The Brightwood Railway Co.* v. *Lewis I. O'Neal*, be, and the same is hereby, *affirmed, with costs*; and that the order of the same court in the cause of *Charles Hof* v. *The Capital Traction Company* refusing to quash the writ of *certiorari* therein issued to the justice of the peace and quashing the proceedings had before the justice of the peace subsequently to the joinder of issue in the cause before him pending, be *reversed, with costs*. And this last mentioned cause will be remanded to the Supreme Court of the District, with directions to quash said writ of *certiorari,* and for such further proceedings in the premises, if any, as may not be inconsistent with this opinion. And it is so ordered.

Mr. Chief Justice ALVEY, dissenting:

The questions presented on these appeals are of more than ordinary importance to the people of this District. They affect the manner of administering justice, as it has heretofore been administered in civil cases, by justices of the peace. The questions are, 1st. What is the nature and extent of the civil jurisdiction of the several justices of the peace, under the Constitution and the acts of Congress made in pursuance thereof, as the Constitution and acts of Congress apply to the District of Columbia? 2d. Whether the act of Congress of March 1, 1823, Ch. 24 (3 Stat. 743), and the subsequent re-enactment thereof, providing for trial by

jury before justices of the peace in civil cases, is constitutional and valid; and, if constitutional and valid, whether the jury so provided for is such a jury as is within the meaning and contemplation of the Seventh Amendment to the Constitution of the United States, or otherwise ? And, 3d. If the acts of Congress giving the right to trial by jury in actions brought before justices of the peace be valid, whether the right of appeal exists to the Supreme Court of the District from judgments rendered upon such trial, and if an appeal lies, to what extent are such judgments re-examinable in the appellate court ?

1. The Constitution of the United States, Art. 1, Sec. 8, among the delegated powers to Congress, declares Congress shall have power to constitute tribunals inferior to the Supreme Court; and to exercise exclusive legislation in all cases whatsoever over the District of Columbia, as the seat of the Government of the United States. By repeated decisions of the Supreme Court of the United States, this latter power has been construed to be equally comprehensive in Congress as are the ordinary legislative powers exercised by the State legislatures, under State constitutions. There is, therefore, no question of the right of Congress to provide for the appointment of justices of the peace, and to prescribe and provide for the performance of their duties, though such officers are not mentioned or designated in the Constitution.

The office of justice of the peace had its origin in England by virtue of the Statute of 34 Ed. 3, as we now recognize it, though the duties pertaining to it have been variously modified and enlarged, both in this country and in England. A civil jurisdiction has been engrafted upon the office and has been exercised from an early time in this country ; and at the time, and long before, the separation of this District from the State of Maryland, civil jurisdiction for the recovery of small debts was exercised by justices of the peace in that State. And in the act of Congress of February 27, 1801, declaring the laws in force in the State of Maryland

to be in force in this District, it was enacted that justices of the peace "shall have all the powers vested in, and perform all the duties required of justices of the peace, as individual magistrates, by the laws in force within this District." This statutory provision is still in force in this District, as will appear from the Revised Statutes of the United States relating to this District, Sec. 995; and their jurisdiction has been declared and extended by repeated subsequent acts of Congress.

A justice of the peace appointed for this District was recognized and defined by the Supreme Court as an officer of the Government of the United States. This was held in the case of *Marbury* v. *Madison,* 1 Cr. 137; and in the subsequent case of *Wise* v. *Withers,* 3 Cr. 331, where the question was whether a justice of the peace in this District was an officer, judicial or executive, of the Government of the United States, and thus entitled to exemption from military duty, Mr. Chief Justice Marshall, in delivering the opinion of the court, said: "If a justice of the peace is an officer of the Government of the United States, he must be either a judicial or an executive officer. In fact, his powers, as defined by law, seem partly judicial and partly executive. He is, then, within the letter of the exemption, and of course must be considered as comprehended within its proper construction, unless there be something in the act which requires a contrary interpretation." The justice of the peace was held to be exempt from military duty.

It is very clear, however, that a justice of the peace in this District is not a judicial officer within the meaning or contemplation of the Constitution of the United States. He is not a judge of a tribunal inferior to the Supreme Court, within the meaning of the Constitution. He is not a judge in any constitutional sense; his proceedings are not according to the course of the common law, and are not matters of record, according to the meaning given by the common law. His jurisdiction in civil matters is purely statutory,

and of a summary character, intended to bring justice home, in matters of small amount, to every man's door, and to dispense with delays and expensive process of the ordinary courts of record.  This has been found necessary to meet the exigencies of society in nearly all States and communities that have founded their juridical systems upon English models.  In speaking of the inferior courts of England, Blackstone, in his Commentaries (Bk. 3, Ch. 4), says: " These little courts, however, communicated with others of a larger jurisdiction, and those with others of a still greater power; ascending gradually from the lowest to the supreme courts, which were respectively constituted to correct the errors of the inferior ones, and to determine such causes as, by reason of their weight and difficulty, demanded a more solemn discussion."   In this country, instead of the court baron, the hundred courts, and the county courts, as they formerly existed in England, and of which Blackstone speaks, a considerable portion of the jurisdiction that was exercised by those inferior courts has been very generally conferred upon justices of the peace, with the right of appeal to a superior court.   In this District, justices of the peace have from the commencement been vested with jurisdiction to try cases and render judgments for any sums not to exceed certain amounts, and which amounts have, from time to time, been increased or extended from $20 to $300 as the limit; the Supreme Court of the District, until recently, having concurrent jurisdiction of all amounts exceeding $50, and at present, under the act of Congress of February 19, 1895, to extend the jurisdiction of justices of the peace, it has concurrent jurisdiction of all amounts exceeding $100.   By the act of Congress just referred to of 1895, it is provided that justices of the peace in this District " shall have jurisdiction to *hear, try and determine all civil pleas and actions*, including attachments and replevin, when the amount claimed to be due, or the value of the property sought to be recovered, shall not exceed $300, ex-

cept," &c. And by the next section of the act it is declared " that such jurisdiction shall be exclusive original jurisdiction where the amount claimed to be due, or the value of the property sought to be recovered, shall not exceed one hundred dollars, and original and concurrent with the Supreme Court of the District of Columbia where the amount claimed to be due, or the value of the property sought to be recovered, is more than one hundred dollars, but does not exceed three hundred dollars; and where the sum claimed exceeds twenty dollars either party shall be entitled to a trial by jury."

The right of appeal is given to either party, in all cases, to the Supreme Court of the District, where the debt or claim exceeds $5. The Supreme Court of the District is required, in a summary way, on appeal taken, to hear the *allegations and proofs* of both parties, and determine upon the same according to law and the equity and right of the matter, at the same term, without continuance or delay, &c.; and either of the parties may demand a trial by jury, or leave the cause to be determined by the court, at their election. Rev. Stats. U. S., D. C., Secs. 774, 775, 776. The trial on appeal to the Supreme Court of the District is *de novo*, and as if the case had been originally instituted in that court. This is manifest from the terms of the statute, directing the manner and course of investigation of the allegations and proofs on appeal. Either party is secured in his right to a jury trial on appeal, if he desires such mode of trial; and it has been held in many cases, as shown by Judge Cooley, "that it is competent to deny to parties the privilege of a trial by jury in a court of first instance, provided the right is allowed and secured on appeal. It is undoubtedly competent," says the author, "to create new tribunals without common law powers, and to authorize them to proceed without a jury; but a change in the forms of action will. not authorize submitting common law rights to tribunals in which no jury is allowed." Cooley, Const. Lim. (6th ed.)

page 505; *Emerick* v. *Harris*, 1 Binn. 416; *McDonald* v. *Schell*, 6 S. & R. 240; *Wilson* v. *Simonton*, 1 Hawks, 482; *Monford* v. *Barney*, 8 Yerg. 444; *Beers* v. *Beers*, 4 Conn. 535; *Reckner* v. *Warner*, 22 Ohio St. 275; *Jones* v. *Robbins*, 8 Gray, 373; *Flint River, &c., Co.* v. *Foster*, 5 Ga. 104; *Lincoln* v. *Smith*, 27 Vt. 328, 360; *Steuart* v. *Baltimore City*, 7 Md. 500. This general principle has been modified as applied to criminal cases, upon the principle that the accused should not be first convicted by a court and then be subject to another trial to entitle him to an acquittal by a jury. It is, therefore, held that the prisoner has a right to jury trial from the first moment and in whatever court he is put on trial for the offence charged. *Callan* v. *Wilson*, 127 U. S. 540. It is manifest, however, that there is a marked distinction between the case of a criminal charge, involving the life or liberty of the party accused, and that of a civil proceeding for the recovery of small debts or demands as between party and party. The case of *Callan* v. *Wilson* was decided on the construction of the second section of the Third Article of the Constitution, which declares that "the trial of all crimes, except in cases of impeachment, shall be by jury;" and on the construction of the Sixth Amendment to the Constitution which declares that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." But the right to trial by jury, secured by the Seventh Amendment to the Constitution, applies only to civil cases, in which legal rights are to be ascertained and determined, as distinguished from rights in criminal cases or equitable rights.

2. The next question is, whether the jury provided for by the act of Congress of March 1, 1823, Ch. 24, and confirmed by subsequent acts of Congress, is a legal and valid jury for the trial of cases before justices of the peace, and if so, whether such jury is a common law jury, and such as is contemplated by the Seventh Amendment of the Constitution?

In view of the exclusive legislative power of Congress over this District, it is difficult to conceive how a question can be seriously raised as to the want of power in Congress to provide for a jury as an aid to the exercise of the jurisdiction conferred upon justices of the peace. But whether such jury is a common law jury, and therefore within the meaning and contemplation of the Seventh Amendment to the Constitution, or a jury of purely a statutory creation in analogy to the common law jury, is another and a different question. By the Seventh Amendment, Sec. 1, to the Constitution, it is provided that " in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law." This was simply preserving the common law right of trial by jury, and all the substantial incidents belonging thereto, without the power of Congress to violate or impair that right.

It has been held from an early day that this provision of the Constitution contemplated only the trial by jury as known and defined by the common law, as distinguished from the juries that may be provided for to aid in the administration of other systems of law, such as the equity, admiralty, or the ordinary probate jurisdiction, or other special statutory juries. *Parsons* v. *Bedford*, 3 Pet. 433. The jury secured by the Constitution is for the trial of suits at common law, and their findings of fact cannot be re-examined, except according to the rules and course of the common law. But the jury provided for by the act of Congress of 1823, Ch. 24, is not a common law jury, in any proper sense of the term. It is indispensable to the exercise of the functions of a common law jury, that it should sit with a judge or court of record, and whose proceedings are according to the course of the common law. Such jury can only decide matters of fact, and that must be under the direction and

subject to the control of a judge of record. Without such judge or court a common law jury cannot perform its proper functions as such. And though a jury may be instituted as a substitute for the common law jury, with most of its incidents, it is not the same thing, and does not fulfill the common law definition. The respective functions of judge and jury are stated by Lord Coke in several places in his commentaries upon Littleton and which have been uniformly recognized as the true lines of distinction. At page 125, section 193, Lord Coke says, that "tryall is to finde out by due examination the truth of the point in issue or question between the parties, whereupon judgment may be given. And as the question between the parties is two fold, so is the triall thereof; for either it is *questio juris*, that shall be tried by the judges either upon demurrer, special verdict or exception. . . . or it is *questio facti.*" And at page 155*b*, Sec. 234, the learned author says, " the most usual triall of matters of fact is by twelve men; for *ad questionem facti non respondent judices ;* and matters in law the judges ought to decide and discuss; for *ad questionem juris non repondent juratores."*

But as we have seen, " a justice of the peace, as an individual magistrate," is not a judge within the meaning of the Constitution, and holds no court in the common law sense; and the jury provided for is clearly not a common law jury. The jurors required to be summoned and empaneled are simply aids or auxiliaries to the magistrate in the exercise *of his jurisdiction ;* and, in analogy to the functions of the common law jury, are required to hear the evidence and render a verdict thereon. And while without a competent court there can be no jury in a common law sense of the term, yet there may be a jury authorized by statute to aid in the exercise of a special summary jurisdiction, such as that of a justice of the peace, without a court according to the common law definition.

Nor is there anything anomalous or novel in these defi-

nitions and distinctions; and certainly it was equally competent to Congress to provide for such jury as it would be to provide for a special jury to hear and determine issues out of a court of equity. Such jury would clearly not be a common law jury to hear and decide upon common rights, within the meaning of the Constitution. The chancellor would not be concluded by the verdict of the jury, but he · could re-examine the facts embraced in the findings of the jury.

In the State of New York, the constitution of the State secured to the party proceeded against trial by jury; and in the case of *People* v. *Fisher*, 20 Barb. 652, the Supreme Court of that State said: "A common law jury trial can only be had in a court of common law jurisdiction, both as regards the character of the court and its mode of procedure. It is not true that simply making the jury to consist of twelve men constitutes a common law jury trial." And, therefore, instead of twelve men, as provided by the act of 1823, Ch. 24, it was equally competent to Congress to have provided for any different number than twelve, either more or less, such jury not being a common law jury, but one constituted in analogy to the common law jury only. *Work* v. *State*, 2 Ohio St. 296.

In the work of Messrs. Thompson and Merriam on Juries, Sec. 10, the authors have collected the authorities upon this question, and stated the result of them as follows: "But whenever facts are to be found in any proceeding in which a jury was not required by the common law, a jury of any number may be authorized within the discretion of the legislature. Thus justices' courts, not being courts of record, and not within the constitutional provision just mentioned, juries did not form a part of the machinery of such tribunals at common law, and so long as an appeal is provided for to the common law courts from their determinations, no constitutional objection can arise whether the

facts are found by a justice or by the aid of a jury of any number of men."

This is, doubtless, in strict accordance with long settled views and opinions, and established practice in all jurisdictions where the judicial functions of the justice of the peace are similar to those exercised by justices of the peace in this District.

3. But is is argued in these cases, and it was so held in the court below, that there is no appeal, and can be none, in any case arising before a justice of the peace where a jury has been or may be demanded, under the act of Congress of 1823, Ch. 24; that the jury provided for by that act is invested with exclusive power of deciding both the law and the facts of the case, wholly irrespective of the power of the justice of the peace, and that there are no means provided for an appeal in any such case, and there can be no review of the findings of the jury. But clearly this construction is without valid foundation. It is true, if the jury provided for by the act of 1823 was a common law jury, it could not be required to decide matters of law, nor could its findings of fact be made re-examinable in any other manner than according to the course of the common law. But not being a common law jury, the inhibition of the Constitution does not apply to its findings, and a reasonable construction of the statute does not require that such jury as that provided for should decide matters of law as well as of fact. The jurisdiction that is exercised is that delegated to the justices of the peace; the agency of the jury is only auxiliary to the exercise of that jurisdiction. The jury is sworn to decide according to the evidence, not the law, and to render a verdict thereon, not a judgment. The judgment is the effective result of the trial, and that is required to be rendered by the justice of the peace. He may not have power, by the terms of the statute, to set aside and vacate the verdict; but he is required to determine all questions relating to the

qualifications of the jurors, and he must, from the necessity of the case, and upon plain principles of implication, have the right to swear the witnesses and determine what evidence shall be heard and considered by the jury; and if no sufficient evidence be offered, it becomes his plain duty to direct a verdict accordingly. The jurors must, in analogy to the relation of the judge and jury at the common law, be subject to the direction of the justice in the course of the trial. Otherwise such trials would likely become farcical, and bring the administration of justice before justices of the peace into contempt. And such being the relation of justice and jury in the trial of causes, in any case where verdict and judgment have been entered, whether upon evidence, or for the want of evidence, and in cases where judgments have been entered without verdicts, the party supposing himself aggrieved thereby has the right of appeal therefrom to the Supreme Court of the District of Columbia. This right of appeal exists *in all civil suits tried before justices of the peace,* where the debt or demand is above $5; and it does not except the cases tried with the aid of a jury. All the legislation of Congress in regard to the civil jurisdiction of justices of the peace must be construed *in pari materia,* and given such effect as will best accomplish the objects of the statutes. The appeal in all cases is taken from the judgment of the justice, whether rendered upon his own inquiry or upon the verdict of a jury, and never from the verdict itself. Upon the appeal coming into the Supreme Court of the District, that tribunal is required to hear the case on the allegations and proofs *de novo,* as if the case had originated in that court; and either party may demand a jury trial. The fact that the case was tried before the justice with the aid of a jury, and that his judgment was rendered upon a verdict, in no manner affects the right and duty of the Supreme Court to hear the case on the allegations and proofs *de novo, and deter-*

*mine upon the same according to law and the equity and right of the matter.*

To hold, according to some of the arguments made at bar, either that the act of Congress of 1823, Ch. 24, is unconstitutional and void, or that there could be no civil jurisdiction conferred upon justices of the peace for amounts to exceed $20, because of the right of parties to demand the trial by common law jury of all amounts exceeding that sum (which jury the act of 1823 does not supply), would be to declare, as the matter of jurisdiction is now limited in this District by the act of Congress of February 19, 1895, that there is no available remedy for parties where the amount claimed to be due, or the value of the property desired to be recovered exceeds $20 and is not more than $100—there being no original jurisdiction in the Supreme Court for amounts under $100. Such state of law, if it really existed, would be very deplorable; but there is in reality, according to my opinion, no such defective jurisdiction existing in this District.

The act of Congress of 1823, Ch. 24, has been the subject of a variety of views and interpretations, as to its effect and proper construction, as will appear from the cases of *Sherburne* v. *Semmes*, 2 Cr. C. C. 446; *Davidson* v. *Burr*, 2 Cr. C. C. 515; *Denny* v. *Queen*, 3 Cr. C. C. 217; *Smith* v. *Chase*, 3 Cr. C. C. 348, and *Fitzgerald* v. *Leisman*, 3 MacA. 6. It was held in those cases, so far as they show any definite ruling, that where a case had been tried by a jury under the act, there could be no re-examination of their findings; that they passed upon the whole case to the exclusion of all participation of the justice, and that an appeal did not subject their findings to re-examination by the appellate court. The right of appeal, however, was all the time in force, and the case on appeal was required to be heard on the respective allegations and proof of the parties *de novo*, as at present: and it is difficult to conceive of any reason why an appeal was not available, except upon some theory, not clearly

10 Ct. App.—18

defined, that the jury provided for by the act of 1823, was a common law jury, within the meaning of the Constitution. This, as I have attempted to show, was not the character of the jury provided for by the act of 1823.

With all the perplexity, and apparent doubt and difficulty in the construction of the act of 1823, and of its application in practice, its constitutionality has never been seriously challenged, until very recently; but by a decision of the court below, recently made, the act has been declared unconstitutional and void. This construction carries with it many serious consequences that should be avoided if possible. The act has been in force for near about three-quarters of a century; and during that time, as we may well suppose, a great many valuable rights have arisen and are dependent upon the validity of proceedings had under that act. To declare the act to have been unconstitutional and void from the commencement, with the consequent invalidity of all proceedings thereunder, would likely produce great trouble and confusion. With all due respect to the opinions of others, however, I am of opinion that the act is not unconstitutional; and that the right to trial by jury, as contemplated by the Constitution, and according to the principles of the common law, is amply secured to either party by the right of appeal to the Supreme Court of the District; and such right of appeal and right to trial by jury on appeal, are necessary conditions to the lawful exercise of the civil jurisdiction of justices of the peace, "where the value in controversy exceeds twenty dollars." Indeed, the right of appeal and a trial *de novo*, both as to law and fact, are essential rights to both plaintiff and defendant in these magistrate's cases, and I cannot concur in any construction by which one party by his mere election of the mode of trial before the justice may cut off the right of appeal to the other. The statute in giving the right of appeal and requiring the case to be tried *de novo* by the appellate court makes no such distinction or discrimination. The right of appeal and a trial before a jury under the direction of a

court of common law jurisdiction, are the rights to be preserved and protected; and the trial by jury thus secured to both parties fully gratifies the constitutional requirements.

These are my views in respect to the exercise of the jurisdiction conferred upon justices of the peace in this District; and it follows from them that, in my opinion, the order of the court below passed in the case of *The United States on the relation of the Brightwood Railway Company* v. *Lewis I. O'Neal,* discharging rule to show cause why a *mandamus* should not issue, and dismissing petition and refusing the *mandamus,* ought to be reversed, and the cause be remanded to the court below that the writ of *mandamus* might issue as prayed. But with respect to the order of the court below, passed in the case of *Charles Hof* v. *The Capital Traction Company,* overruling motion to quash writ of *certiorari,* and quashing part of proceedings before the justice of the peace, such order should be reversed, and the petition for the writ of *certiorari* be dismissed, for the reason that an appeal from the judgment of the justice of the peace would furnish to the defendant the appropriate remedy for any grievance it might have by the judgment of the justice.

On March 3, 1897, an application was made on behalf of the appellant, the Brightwood Railway Co., for a writ of error to the Supreme Court of the United States.

On March 6, 1897, the application was denied, Mr. Chief Justice ALVEY delivering the opinion of the Court:

The principle involved in this case is one of more than ordinary importance, and it is therefore desirable that it should be finally settled by the Supreme Court of the United States, if there be any way by which it can be taken to that tribunal of last resort. But we are not able to perceive any ground upon which a writ of error can be allowed, under the decisions of the Supreme Court. It is true, it is not for this court to decide the question of jurisdiction of

the Supreme Court, or in what case a writ of error will lie; but it should at least appear that the case is reasonably within some principle upon which the writ of error can be allowed, to justify this court in allowing the writ and sending the case to the Supreme Court. But while we feel constrained to refuse the allowance of the writ, the party making the application for it can apply · to one of the justices of the Supreme Court for the writ, and the order that we now make will in no manner prejudice the right. The writ of error is *refused.*